# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| GARY KIRSCHKE | : | Case No. 08-42890-JBR |
| MARY G. KIRSCHKE | : | |
|    DEBTORS | : | |
| ~~~~~~~~~~~~~~~~~~~~~~ | | |
| GARY KIRSCHKE | : | |
| MARY G. KIRSCHKE | : | |
|    PLAINTIFFS | : | |
| v. | : | Adv. Pro. No. 08-4191-JBR |
| BUTLER BANK, | : | |
|    DEFENDANT. | : | |

**MEMORANDUM OF DECISION ON (i) BUTLER BANK'S OBJECTION TO CONFIRMATION; (ii) DEBTORS' OBJECTION TO CLAIM OF BUTLER BANK; (iii) BUTLER BANK'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (iv) DEBTORS' MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I AND II; (v) AND DEBTORS' CROSS-MOTION FOR SUMMARY JUDGMENT AS TO COUNTS IX AND X**

This proceeding came before the Court on (i) the Objection by Butler Bank to Confirmation of the Proposed Chapter 13 Plan [Bankruptcy docket # 39][1]; (ii) the Debtors' Objection to the Proof of Claim of Butler Bank [Bankruptcy docket # 43]; (iii) Butler Bank's Motion for Summary Judgment and Memorandum in Support of Motion [AP docket # 45]; (iv) the Debtors' Motion for Summary Judgment as to Counts I and II and as to Debtors' Objection to the Claim of Butler Bank [AP docket # 46]; and (v) the Debtors' Objection to Motion by Butler Bank for Summary Judgment as to Counts I, II, IX and X and Cross-Motion for Summary Judgment as to Counts IX and X [AP docket # 57]. In addition the parties filed various other oppositions, memoranda, affidavits and

---

[1] Citations to pleadings filed in Case No. 08-42890 are denoted as "Bankruptcy docket #–. " Pleadings filed in Adversary Proceeding are cited as "AP Docket #."

documents in support of their respective positions. Despite the accumulation of several hundred pages, the dispute is, at its essence, a simple one arising from a series of loans made by Butler Bank to the Kirschke Group, Inc. to build a house in Harvard, Massachusetts.

The Debtors filed the above adversary proceeding against Butler Bank alleging, among other things, that the Debtors' September 10, 2007 grant of a mortgage to the Bank was a preference, based in part on the Bank's alleged status as an insider (Count I of the Complaint); and that the Debtors' grant of the September 10, 2007 deed in lieu to the Bank was a "constructive fraudulent transfer" under 11 U.S.C. § 548(a)(1) and M.G.L. c. 109A §§ 5(a)(2) and (6)(a) and (b) (Count II). The Debtors also allege that the Bank violated the Federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* (" TILA") and Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140 ("MCCCDA") (Count IX) and M.G.L. c. 183 § 28C (Count X) in connection with the September 10, 2007 refinancing of the Debtors' primary residence. Butler Bank seeks summary judgment on the four foregoing counts. The Debtors seek summary judgment with respect to the same four counts.

The Debtors' proposed plan and their objection to Butler Bank's proof of claim focus on the September 10, 2007 refinancing of their residence and their alleged right to rescind the transaction while Butler Bank disputes that the loan may be rescinded.

**FACTS**

On May 20, 2005 the Bank loaned $1,565,320 (the "May 2005 Loan") to the Kirschke Group, Inc., a real estate development company owned and controlled by the

Debtors, and to the Debtors.[2] The May 2005 Loan was secured by mortgages on real estate located in Harvard, Massachusetts and owned by the Kirschke Group (the "Harvard Real Estate") and the Debtors' primary residence, located in Marlborough, Massachusetts (the "Debtors' Residence").[3] The purpose of the May 2005 Loan was to develop a high-end "spec" home on the Harvard Property (the "Development Project"). Although it was labeled "Secured Demand Note," the note had a maturity date of May 20, 2006.

On September 13, 2006 the Bank loaned the Kirschke Group and the Debtors an additional $78,000 (the "September 2006 Loan").[4] The September 2006 Loan was secured by mortgages on the Harvard Property and on the Debtors' Residence.[5] It too is labeled "Secured Demand Note" but had a stated maturity date of March 13, 2007.

The loans went into default as the Kirschke Group apparently struggled to complete the Development Project. On September 10, 2007 the Kirschke Group gave the Bank a deed in lieu of foreclosure for the Harvard Property in exchange for a $1,364,000 reduction of the debt owed by the Kirschke Group to the Bank.[6] The deed in lieu is signed by Gary Kirschke as president and treasurer of the Kirschke Group. On the same day the Kirschke Group, the Debtors and the Bank also entered into an

---

[2] Exhibit D to Affidavit of Joseph G. Butler In Support of Butler Bank's Motion for Partial Summary Judgment [AP docket # 45] (hereinafter "Butler Affidavit").

[3] *Id.*

[4] Exhibit H to Butler Affidavit.

[5] Id. and Exhibit J to Butler Affidavit.

[6] Exhibit K to Butler Affidavit.

"Agreement for Changes to Mortgage" (the "Modification Agreement") whereby, among other things, the maturity date of the note and mortgage on the Debtor's Residence, given as part of the May 2005 Loan, was extended from May 20, 2006 to September 20, 2047.[7]  The Modification Agreement also amended the amount of the loan to $425,000, which amount included $95,000 advanced to pay of the existing first mortgage on the Debtors' Residence; $78,000 to pay off the September 2006 Loan; and $42,000 towards the completion of the Development Project.  Although the Modification Agreement, at ¶ 9, states the borrowers agree to immediately provide the Bank with a deed in lieu for the Debtors' Residence *OR* not object to foreclosure action taken by the Bank with respect to that property, the Debtors did not tender such a deed.

The Modification Agreement notes that the Debtors were given an opportunity to consult with independent counsel and gives a purported release "from any and all actions relating to this [Modification] Agreement or the above loans."  Paragraph 11 of the Modification Agreement expressly acknowledges the Debtors' agreement that "the subject loans" were made for business purposes.

On September 9, 2008 the Debtors filed a voluntary petition under Chapter 13.

**POSITION OF THE PARTIES**

The Debtors assert and the Bank disputes that the Bank is an insider of the Debtors because of its "pervasive control" over the Development Project, and further assert that the Bank was the "de facto" partner of the Debtors.  Consequently they argue that the one year look back provision of 11 U.S.C. § 547(4)(B) is applicable.

---

[7]Exhibit L to Butler Affidavit.

Although the Complaint alleges that the Debtors granted the Bank a mortgage on the Debtors' Residence on September 10, 2007, Gary Kirschke admitted at his deposition that the Bank did not receive a new mortgage as part of the September 10, 2007 transactions.[8]  They now argue that the $42,000 added to the note and mortgage pursuant to the Modification Agreement was a transfer for which they received no consideration and made at a time when they were insolvent.  Completing the elements required to prove a preferential transfer, the Debtors allege that the Bank received more than it would have because of the $42,000, although this allegation is not developed beyond the bare assertion.  The Debtors assert that the addition of $42,000 to their mortgage also constitutes a fraudulent transfer under either § 548 of the Bankruptcy Code or M.G.L. c. 109A §§ 5 and/or 6 and rely upon the some arguments as they advance to support the preference claim.

     The Debtors somewhat inconsistently argue that the deed in lieu of foreclosure extinguished the underlying debt and rely upon *Dickason v. Williams*, 129 Mass. 182 (1880), but they also suggest that the deed was invalid as it was never authorized by the board of directors.  They further allege that, as a "hybrid action," accepting a deed in lieu is the functional equivalent of a foreclosure and thus wipes out unpaid liens.  Despite the Kirschke Group's acceptance of the stated $1,364,000 reduction of the May 2005 Loan, the Debtors further argue that the Bank did not use reasonable efforts to get the best price for the Harvard Property and cite an April 30, 2007 appraisal valuing the

---

    [8]Exhibit A to Butler Affidavit.

5

property at $1,760,000.[9] At oral argument the Debtors emphasized that while Debtor Gary Kirschke signed the deed in lieu in his capacity as an officer of the Kirschke Group, Mrs. Kirschke was not a party to that instrument.

The Debtors also assert that the acceptance of the deed in lieu was a material modification of their joint obligation and one that impaired the collateral. According to the Debtors, this impairment terminated their obligation pursuant to M.G.L. c. 106 § 3-605(d), (e), or (f) and (g).

The Bank counters with an assertion that there was no transfer of property on September 10, 2007 as the Debtors did not grant the Bank a new mortgage on that date as they had originally pled in the Complaint.  Moreover the only transfer was of the Harvard Property, an asset owned by the Kirschke Group, not the Debtors.  Because the Debtors did not transfer any of their property within one or even two years of the commencement of their bankruptcy, the claims for preference and fraudulent transfer fail.  The Bank disputes the allegations on which the Debtors base their conclusion that the Bank exercised pervasive control, as well as the ultimate conclusion that the Debtors would have the Court make.

The Bank urges the Court to reject the Debtors' Cross-Motion for Summary Judgment with respect to Counts IX and X as untimely since it was filed after the deadline established in the Court's Pretrial Order [AP docket # 8].  It also claims that neither TILA nor the MCCCDA are applicable to any of the transactions because the loans were made for commercial purposes, not primarily for "personal, family, or

---

[9]Exhibit 26 to Affidavit of James L. O'Connor [AP Docket # 48] (hereinafter "O'Connor Affidavit I").

6

household uses." Although acknowledging that M.G.L. c. 183 does not define a "home loan" to which § 28C applies, the Bank urges that the Court adopt the definitional boundaries of TILA and the MCCCDA, namely that a residential loan must be for primarily for "personal, family, or household uses." Thus the Bank reasons that the Debtors' acknowledgment in the Modification Agreement that the loans were for commercial purposes is fatal to their claim. The Bank does not address the Debtors' argument that the deed in lieu terminates their obligation. It does, however, allege that the Modification Agreement did not satisfy or cancel the existing notes and mortgages but merely modified the terms of those instruments.

**DISCUSSION**

Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr. P. 7056, provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." In the instant case, the facts relevant to the decision are not in dispute because, solely as a matter of law, the Debtors are not entitled to relief under any of the four counts now at issue.

**STANDING**

Although neither party has raised the question of standing, the Court nevertheless has an obligation to examine the issue. *In re Industrial Commercial Elec., Inc.*, 2004 WL 1354530, *5 (Bankr. D. Mass. April 27, 2004). *See also Miller v. Brotherhood Credit Union (In re Miller)*, 251 B.R. 770 (Bankr. D. Mass. 2000) (court raised chapter 13 debtors' standing at pretrial conference); *Cardillo v. Andover Bank (In*

7

*re Cardillo),* 169 B.R. 8 (Bankr. D.N.H.1994) (court addressed chapter 13 debtor's standing to bring preference action after trial).

Although there is a split among the courts as to whether a chapter 13 debtor may exercise a trustee's strong arm powers, courts and commentators have recognized that courts permitting the debtor's use of those powers often do so without addressing the standing issue. *Id.* at 11; *Miller,* 251 B.R. at 772. *See also* Keith M. Lundin, *Chapter 13 Bankruptcy,* 3d Ed., § 53.1 at 53-2-53-7, and n.7 (2000 and 2004 Supp.). As numerous courts have noted, "there is a significant and growing number of courts that have held, except to enhance the debtor's exemptions under section 522, the chapter 5 avoiding powers of a trustee are not available to a chapter 13 debtor." *Id.* at 11; *Miller,* 251 B.R. at 772. *See also* Lundin, § 53.1 at 53-3-53-5.

The Court agrees with and adopts the analysis set forth in *Cardillo* and *Miller,* both of which began and ended with the plain language of § 1303.[10] The *Cardillo* court succinctly explained its reasoning as follows:

> Section 547(b) provides, "[e]xcept as provided in subsection (c) of this section, the *trustee* may avoid any transfer of an interest of the debtor in property-" (emphasis added). Nowhere in chapter 13 is a debtor given the powers of a trustee. Section 1303 of the Bankruptcy Code gives a debtor certain powers of a trustee under section 363 of the Bankruptcy Code, but these only relate to the use, sale or lease of property. Although some courts have found that a chapter 13 debtor does have the avoiding powers, especially when the asset avoided goes to the benefit of creditors, this Court joins the significant and growing number of courts that have

---

[10] Section 1303 provides:
Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title.

8

> held, except to enhance the debtor's exemptions under section 522, the chapter 5 avoiding powers of a trustee are not available to a chapter 13 debtor.

*Cardillo,* 169 B.R. at 11. Section 1303's limitation on a chapter 13 powers stands in stark contrast to the expansive grant of trustee powers to a chapter 11 debtor in possession.[11]

Nor does the one addition to a chapter 13 debtor's avoidance powers confer standing on these Debtors. Section 522(h) permits a debtor to avoid a transfer "to the extent that the debtor could have exempted such property under subsection (g)(1)" of § 522 if the trustee could have brought, but did not bring, the action. The limitation set forth in § 522(g)(1) prevents the Debtors from avoiding the claimed transfer as that subsection requires that either the transfer was (i) involuntary and was not concealed by the debtors; or (ii) could have been avoided under § 522(f)(1)(B). The former requirement is inapplicable as the alleged transfer was voluntary. Even if the transfer could be considered involuntary if the Debtors were coerced into signing the Mortgage Amendment, they have not proffered any evidence that this was the case. The alleged control that the Bank exerted over the Development Project and the fact that they signed the Agreement when the Loans were in default does not transform their

---

[11]Section 1107 provides:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform the functions and duties, except the duties specified in section 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

9

voluntary granting of a mortgage into an involuntary transfer.[12] The later requirement is inapplicable as the transfer was not in the personalty of a type described in § 522(f)(1)(B).

Because the Debtors lack standing to pursue the avoidance actions set forth in §§ 547 and 548, summary judgment will enter for the Bank and Counts I and II will be dismissed.

**COUNT IX**

The Bank correctly points out that the Debtors' cross-motion for summary judgment on Counts IX and X was untimely. Since the Bank is also seeking summary judgment on these same counts, it is necessary for the Court to address these claims.

Count IX is based on the federal and state statutes dealing with refinancing of a debtor's principal residence in connection with a "consumer" financing. The credit extended to a "consumer" must be "primarily for personal, family or household purposes." Regulation Z, 12 C.F.R. 226.1(c)(1). Even loans secured by an individual's residence fall outside TILA and the MCCCDA when the loan has a business purpose. 15 U.S.C. § 1603(1). *Morse v. Mutual Fed. Sav. & Loan Assn of Whitman*, 536 F.Supp. 1271, 1278 (D. Mass. 1982). "In determining whether a loan is commercial or consumer in nature, we must examine the transaction as a whole and the purpose for which the credit was extended." *Levites v. Chipman*, 30 Mass.App.Ct. 356, 360, 568 N.E.2d 639, 641 (1991) (internal quotation marks omitted).

The Debtors' pledge of the residence in May 2005 and September 2006 and the

---

[12]The Court is not finding that the alleged addition of $42,000 to the Debtors' obligation, which the Debtors assert occurred but the Bank denies took place, actually occurred. In light of the Debtors' lack of standing, there is no reason to reach that issue.

September 2007 modification of their obligations thereunder arose in the context of their co-making what were business loans. There is no dispute that the money was loaned in order to build and sell a spec house. In fact the Modification expressly confirms this fact. Paragraph 11 of the Modification Agreement specifically states: "The borrowers agree that the subject loans were made for business purposes."

The Debtors ask the Court to find some ambiguity in the words "subject loans" and urge that those loans not include the note secured by the mortgage on the Debtors' Residence. Such a reading strains credulity. The document itself notes that the borrowers are the Kirschke Group, Gary Kirschke and Mary Kirschke. The only obligations on which the Kirschkes were individually borrowers were those notes and mortgages on the Debtors' Residence. Moreover the document identifies the property that is the subject of the Modification Agreement as the property located at 134 Anderson Road, Marlborough, Massachusetts, which is the Debtors' Residence. Consequently, summary judgment will enter for the Bank and Count IX will be dismissed.

**COUNT X**

The Debtors argue that Count X's claim based on M.G.L. c. 183 § 28C is not precluded even if the obligations were incurred in commercial context because the statute only requires that the refinancing be of a home mortgage. The Debtors are correct in their assertion that the statute does not define a home mortgage. But the statute requires that a refinancing of a home mortgage be in the borrower's best interests. The regulations issued pursuant to authority conferred by § 28C(c), although

11

not promulgated until 2009, give guidance as to how the statute should be interpreted. 209 C.M.R. § 53.02 defines a borrower as "a natural person who seeks or acquires a home loan for personal, family, or household use.  Borrower does not include a Cosigner."  A Cosigner, in turn, is defined as "a natural person who assumes liability for the obligation of a borrower without receiving goods, services, or money in return for the obligation."  *Id.*  This definition precisely fits the image that the Debtors now attempt to portray for themselves in arguing that they received no benefit from the Modification Agreement.  Finally the regulation defines a home loan to require that the loan must be incurred "primarily for personal, family or household purposes...."  *Id.*  As the loans had a primary commercial purpose, summary judgment will enter for the Bank and Count X will be dismissed.

**THE OBJECTIONS**

The Debtors' Objection to the Bank's claim and the Bank's Objection to Confirmation present the same issues raised in Counts I, II, IX, and X.  The Bank objects to confirmation because the plan provides, under the section for claims to be paid directly to the creditor that the Bank's claim is rescinded and that no finance or other charges will accrue until the termination of the rescission period.  The Objection to the Bank's claim is based upon the Debtors' assertion that the "Debtors caused a deed-in-lieu of foreclosure to [the Harvard Property] to be executed and delivered to Butler Bank."  The deed, however, was actually executed by the Kirschke Group, the owner of the Harvard Property.  For the reasons set forth above, the Debtors' Objection to the Bank's claim is OVERRULED and the Bank's Objection to confirmation is SUSTAINED.

**CONCLUSION**

For the foregoing reasons, the Bank's Motion for Partial Summary Judgment is GRANTED; the Debtors' Motion and Cross-Motion for Summary Judgment is DENIED.

The Debtors' Objection to the Bank's claim is OVERRULED and the Bank's Objection to confirmation is SUSTAINED.

Separate orders will issue.

*Joel B. Rosenthal*

Dated: November 24, 2009            _____

                                                    Joel B. Rosenthal
                                                    United States Bankruptcy Judge